**FILED**

AUG 0 4 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 08 CR 50008 |
| vs. ) | Judge Frederick J. Kapala |
| ) | |
| FREDERICK BOND ) | |

## PLEA AGREEMENT

1.   This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant FREDERICK BOND, and his attorney, HANEEF OMAR, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.   The indictment in this case charges defendant with carjacking (Count One), in violation of Title 18, United States Code, Section 2119, use of a firearm in furtherance of a crime of violence (Count Two), in violation of Title 18, United States Code, Section 924(c)(1)(A), possession of an unregistered firearm (Count Three), in violation of Title 26, United States Code, Section 5861(d), and possession of firearms by a felon (Count Four), in violation of Title 18, United States Code, Section 922(g)(1).

3.   Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Counts One and Two of the indictment. Count One charges defendant with taking a motor vehicle from the person and presence of another with the intent to cause serious bodily harm, in violation of Title 18, United States Code, Section 2119. Count Two charges defendant with using and carrying a firearm in during and in relation to a crime of violence, in violation of Title 18, United States Code, Section 924(c)(1)(A).

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Two of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt.

   a. With respect to Count One of the indictment: On December 24, 2007, at Rockford, defendant, with the intent to cause serious bodily harm took a motor vehicle, namely a 2003 Ford Focus, that had been transported, shipped and received in foreign and interstate commerce, from the person and presence of another person by force and violence, and by intimidation.

   b. With respect to Count Two of the indictment: On December 24, 2007, at Rockford, defendant, during and in relation to a crime of violence, namely the offense

2

described in Count One of the indictment, knowingly used and carried firearms, namely a Rossi, model 971, .357 caliber revolver, bearing serial number F406488 (hereinafter "Rossi .357 caliber revolver") and a Charles Daly, Field model, 28 Gauge double barrel shotgun, bearing serial number 60-03-4658-02 with barrels of less than eighteen inches in length (hereinafter "sawed-off shotgun").

        c.        Specifically as to Counts One and Two, on December 24, 2007, defendant approached a 2003 Ford Focus (hereinafter "Ford Focus")which was parked at a restaurant parking lot on State Street in Rockford, Illinois at approximately 1:00 a.m. The Ford Focus was manufactured outside the State of Illinois in Michigan and Mexico. Defendant spoke to the driver of the vehicle (hereinafter "Victim A") and asked for a cigarette. Defendant entered the Ford Focus without Victim A's consent and sat in the front passenger seat.

After entering the vehicle, defendant showed Victim A the sawed-off shotgun which was in the right sleeve of defendant's coat. The sawed-off shotgun had barrels which were only 15 inches in length. Defendant pointed the shotgun at Victim A and told Victim A to drive defendant to the back parking lot of the restaurant. Defendant showed Victim A the Rossi .357 caliber revolver and told Victim A that the gun was a .357 Magnum. Defendant said that he would blow Victim A's brains out if Victim A did not do what defendant wanted. Defendant then told Victim A to give him money. Victim A gave defendant approximately

$50 in cash. After Victim A gave defendant the cash, defendant demanded Victim A's wallet.

Defendant forced Victim A to drive to an ATM machine on East State Street in Rockford but that machine was out of service. Defendant forced Victim A to continue to drive on State Street looking for another ATM machine. Defendant hit Victim A in the head with the revolver causing Victim A to start bleeding profusely from his forehead. When Victim A pulled into a gas station and convenience store on East State Street to use the ATM, defendant told him to park in the back of the parking lot where no one else was parked. Defendant gave Victim A a sock he found in the back seat and told Victim A to wipe the blood off of his face. Defendant told Victim A that he was going to go inside with him and that if Victim A tried anything funny, defendant would shoot him. Victim A withdrew $200 in cash from his account which defendant took from Victim A before they left the store.

Defendant forced Victim A to continue to drive and eventually Victim A drove them back to the same convenience store where Victim A had withdrawn money the first time. When they attempted to go into the store, the door was locked and they observed a clerk mopping the floor. The clerk told them that it would take approximately 5 minutes. While they were waiting to get into the store, Defendant began talking to another individual (hereinafter "Victim B") who was getting gas. Defendant told Victim B that Victim B was going to drive defendant to a housing project in Rockford. Victim B refused and defendant showed Victim B the sawed-off shotgun that defendant was concealing in his right coat

sleeve. Victim B then agreed to give defendant a ride but told defendant that Victim B had to pay for his gas first. Victim B went into the store and asked the clerk to call the police.

Shortly after Victim B went inside the store and called the police, a Rockford Police officer arrived. Defendant was standing outside the store when the officer arrived. Defendant began walking in the opposite direction and did not stop when the officer ordered him to do so. As defendant continued to walk around the building away from the officer, defendant threw the sawed-off shotgun on the ground. The officer ordered defendant to get on the ground and defendant complied after another squad car pulled up next to the officer. The officers then handcuffed defendant. When defendant was arrested he had the Rossi .357 caliber revolver in his back pants pocket. At the time of his arrest, defendant also had $256 in cash, Victim A's wallet and Victim A's cell phone in defendant's pants pockets.

### Maximum Statutory Penalties

7. Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

   a. Count One carries a maximum sentence of 15 years' imprisonment. Count One also carries a maximum fine of $250,000. Defendant further understands that with respect to Count One the judge also may impose a term of supervised release of not more than three years.

   b. Count Two carries a maximum sentence of life imprisonment and a statutory mandatory minimum sentence of 10 years. The sentence of imprisonment on Count

5

Two is required to be consecutive to the sentence on Count One. Count Two also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Two, the judge also may impose a term of supervised release of not more than five years.

    c.    Defendant further understands that the Court must order restitution to the victims of the offenses in an amount determined by the Court.

    d.    In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

    e.    Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is life imprisonment, and the minimum sentence is 10 years' imprisonment. In addition, defendant is subject to a total maximum fine of $500,000, a period of supervised release, and special assessments totaling $200, in addition to any restitution ordered by the Court.

### Sentencing Guidelines Calculations

8.    Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

b. **Offense Level Calculations.**

i. Pursuant to Guideline § 2B3.1, the base offense level for the charge in Count One of the indictment is 20.

ii. Pursuant to Guideline §2B3.1(b)(2)(F), the offense level for Count One is increased by two levels to level 22, because defendant made a threat of death.

iii. Pursuant to Guideline §2B3.1(b)(3)(A), the offense level for Count One is increased by two levels to level 24, because defendant caused bodily harm to the victim.

iv. Pursuant to Guideline §2B3.1(b)(4)(A), the offense level for Count One is increased by four levels to level 28, because defendant abducted the victim as part of the offense.

v. Pursuant to Guideline §2B3.1(b)(5), the offense level for Count One is increased by two levels to level 30, because the offense involved carjacking.

vi. Pursuant to Guideline § 4B1.1, the defendant is a "career offender," because the defendant was (1) at least eighteen years old at the time of the instant offense of conviction in Counts One and Two of the indictment, (2) the instant offenses of

conviction in Counts One and Two of the indictment are crimes of violence, and (3) the convictions noted in paragraphs 10(c)(i) and (ii) are crimes of violence.

    vii. Pursuant to Guideline Section 2K2.4(c), because defendant is a career offender and one of the instant offenses of conviction is a violation of 18 U.S.C. § 924(c), the guideline sentence is determined under Guideline § 4B1.1(c).

    viii. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

    ix. In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

  c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 7 and defendant's criminal history category is IV. However, defendant's criminal history category is VI because defendant is a career offender pursuant to Guideline § 4B1.1.

  i. On February 22, 1996, in case number BA126292, in the Superior Court of Los Angeles County, California, defendant was convicted of assault with a deadly weapon, and was sentenced to 2 years of imprisonment resulting in the assignment of three criminal history points pursuant to Guideline § 4A1.1(a).

  ii. On February 19, 2002, in case number 02 CR 231-II, in the Common Pleas Court of Richland County, Ohio, defendant was convicted of aggravated assault, a felony, and was sentenced to 10 months of imprisonment resulting in the assignment of two criminal history points pursuant to Guideline § 4A1.1(b).

  iii. On March 9, 2004, in case number 03 CR 607-H, in the Common Pleas Court of Richland County, Ohio, defendant was convicted of theft, a crime punishable by a maximum term of imprisonment of 12 months, and was sentenced to 10 months of imprisonment resulting in the assignment of two criminal history points pursuant to Guideline § 4A1.1(b).

  d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government and pursuant to Guideline § 4B1.1(c), the

anticipated advisory Sentencing Guidelines range is 262 to 327 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of 10 years' imprisonment on Count Two which must imposed consecutively to any other term of imprisonment imposed.

  e. Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

  f. Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines.

The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### **Agreements Relating to Sentencing**

10. Each party is free to recommend whatever sentence it deems appropriate.

11. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

12. The defendant will request that the court exercise its discretion, pursuant to *United States v. Booker*, 125 S.Ct. 738 (2005), to impose a sentence below the applicable Guideline range. The government will oppose defendant's request for a downward variance.

13. Regarding restitution, the parties acknowledge that pursuant to Title 18, United States Code, § 3663A, the court must order defendant to make full restitution to the victim in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

14. Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

15. After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to this defendant.

### Presentence Investigation Report/Post-Sentence Supervision

16. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

17. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence

for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

18. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

19. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 08 CR 50008.

20. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or

cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

21. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

   a. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

   i. The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

   ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

    iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

    iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

    vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.　At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b.　**Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 10 calendar days of the entry of the judgment of conviction.

c.　Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

22.　By entering this plea of guilty, defendant also waives any and all right the defendant may have, pursuant to 18 U.S.C. §3600, to require DNA testing of any physical evidence in the possession of the Government. Defendant fully understands that, as a result of this waiver, any physical evidence in this case will not be preserved by the Government and will therefore not be available for DNA testing in the future.

### Other Terms

23.　Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing

financial statements and supporting records as requested by the United States Attorney's Office.

24. Defendant further understands that upon entry of a judgment of conviction, the court may order the confiscation and disposal of the firearm possessed by the defendant, pursuant to Title 18, United States Code, § 3665. Defendant agrees to abandon all rights and claim to the firearm and ammunition in order that an appropriate disposition may be made thereof by the Bureau of Alcohol, Tobacco, and Firearms.

25. Defendant understands that the government has the right to seek defendant's truthful testimony before a grand jury or a district court.

## Conclusion

26. Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

27. Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant

breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

28. Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

29. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

30. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 8-4-08

PATRICK J. FITZGERALD
United States Attorney

FREDERICK BOND
Defendant

JOSEPH C. PEDERSEN
Assistant U.S. Attorney

HANEEF OMAR
Attorney for Defendant

18